IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| JEFFREY S. LINDNER, | ) | CIVIL NO.  06-00394 JMS/LEK |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING THIRD-PARTY |
| | ) | DEFENDANT SOUTHERN FOODS |
| vs. | ) | GROUP, L.P.'S MOTION FOR |
| | ) | PARTIAL SUMMARY JUDGMENT |
| MEADOW GOLD DAIRIES, INC., | ) | ON PART OF COUNT V OF |
| | ) | PLAINTIFF'S COMPLAINT FILED |
| Defendant, Third- | ) | JULY 19, 2006 |
| Party Plaintiff, and | ) | |
| Counter Defendant, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| SOUTHERN FOODS GROUP, L.P., | ) | |
| | ) | |
| Third-Party | ) | |
| Defendant, Counter | ) | |
| Claimant, Cross- | ) | |
| Claim Defendant. | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| BORDEN, INC., | ) | |
| | ) | |
| Defendant and | ) | |
| Cross-Claimant. | ) | |

_____

**ORDER GRANTING THIRD-PARTY DEFENDANT SOUTHERN FOODS
GROUP, L.P.'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON
PART OF COUNT V OF PLAINTIFF'S COMPLAINT
FILED JULY 19, 2006**

# I.  INTRODUCTION

Third-Party Defendant Southern Foods Group, L.P. ("SFG") moves for partial summary judgment as to part of Count V of Plaintiff Jeffrey Lindner's ("Lindner") Complaint.  At issue is whether Defendant and Third-Party Plaintiff Meadow Gold Dairies, Inc. ("Meadow Gold") is liable for failing to surrender the land it leased from Lindner in the appropriate condition when it terminated the Lease.  SFG argues that under the Lease's surrender clause, the obligation to restore the premises to its pre-Lease condition applies only to those portions of the property affected by improvements that were to be removed at Lindner's election.  Lindner, on the other hand, claims that the entire premises was to be restored to its pre-Lease condition upon termination of the Lease.  Based on the following, the court GRANTS SFG's Motion for Partial Summary Judgment on Part of Count V of Plaintiff's Complaint.

# II.  BACKGROUND

## A.    Factual Background[1]

Lindner is the fee simple owner of land located on the island of

---

[1] Three prior rounds of motions for partial summary judgment have been decided in this case.  For additional factual and procedural background, *see Lindner v. Meadow Gold Dairies, Inc.*, --- F. Supp. 2d ---, 2007 WL 2381234 (D. Haw. Aug. 10, 2007); --- F. Supp. 2d ---, 2007 WL 2320669 (D. Haw. Aug. 9, 2007); and --- F. Supp. 2d ---, 2007 WL 1430373 (D. Haw. May 14, 2007).

2

Kauai, which he acquired in 1996 from Amfac Property Development Corporation

("Amfac").  In 1988, Amfac leased a portion of the land to Meadow Gold for the

operation of a dairy farm.  When Lindner acquired the land in 1996, Amfac

assigned him its interests and obligations under the Lease.  In 1997, Meadow Gold

exercised its renewal options, thereby extending the Lease until September 30,

2013.  Shortly thereafter, Meadow Gold assigned its interests under the Lease to

SFG.  Lindner contests the validity of this assignment.

Article IV § 16 of the Lease includes a surrender provision, under

which Lindner had the option of requiring Meadow Gold to remove any

improvements and restore the premises upon termination of the Lease:

> Surrender of Premises.  At the expiration of the term or sooner
> termination, Lessee shall peaceably surrender and deliver up to
> Lessor possession of the premises, together with the possession
> of and title to all buildings and other permanent improvements
> of whatever kind or nature thereon, but not including
> automotive or portable machinery or equipment which in a
> dairy operation and related pasture use is customarily moved
> from place to place upon said premises, in substantial good
> order and condition, reasonable wear and tear and damage by
> the elements or other unavoidable casualty not herein required
> to be insured against excepted; provided, however, that in
> Lessor's discretion Lessor may require that all buildings,
> building pads, foundations, fences or other improvements
> constructed by Lessee during the term shall be removed and the
> premises restored, to the greatest extent possible, to the
> condition they were in at the commencement of this Lease.

3

Lease Art. IV § 16, attached as SFG's Ex. A.

In July 2000, Meadow Gold informed Lindner that it would be terminating the Lease and abandoning its tenancy effective December 31, 2000, a little under thirteen years early. At the time that it surrendered the premises, Meadow Gold left behind various roads, a milking barn, a hospital barn, utilities, underground irrigation systems, a white water tank, and a green metal tank. Compl. ¶ 24. Portions of the property were used as a cattle graveyard (which the parties alternatively refer to as a "carcass pit" and "boneyard"), a dirt mine, and a landfill. Lindner Decl. ¶¶ 24-33, attached as SFG's Ex. D. Lindner did not authorize the burial of cows on the property. *Id.* ¶ 32. According to Lindner, Meadow Gold has not fully disclosed the location of all animal remains, but there are likely at least two burial sites, and experts on both sides reached a consensus that a reasonable estimate for the number of cows buried on the site exceeds 2,300. Pl.'s Mem. in Opp'n 11; Pl.'s Ex. 5. A question of fact remains as to whether Lindner made an election regarding the removal of improvements prior to the Lease's termination on December 31, 2000.

## B.    Procedural Background

Lindner filed suit on July 19, 2006. On December 1, 2006, Meadow Gold filed a Third-Party Complaint against SFG, seeking in Count I contribution

4

and indemnification for its potential liability.  On January 8, 2007, SFG filed a Counterclaim against Meadow Gold, claiming in Count III that it had met its obligations with respect to Lindner's removal and restoration claims.  Borden, Inc. ("Borden") was added as a Defendant on June 5, 2007 and filed a Cross-claim against SFG on September 17, 2007.  Following several motions for summary judgment, the following claims remain: Count IV (removal of permanent improvements) and Count V (restoration of the premises) of Lindner's Complaint; Count I of Meadow Gold's Third-Party Complaint against SFG; Count III of SFG's Counterclaim against Meadow Gold; and Borden's Cross-claims against SFG.

SFG previously moved for partial summary judgment as to Counts IV and V and, by extension, Count I of Meadow Gold's Third-Party Complaint and Count III of SFG's Counterclaim.  The court denied the motion as to Count IV finding that a genuine issue of material fact existed as to whether Lindner gave Meadow Gold sufficient notice of his expectations regarding items he wanted removed from the premises before the termination of the Lease.  As to Count V, the court ruled that there were genuine issues of material fact as to whether Meadow Gold's use of the leased land as a cattle graveyard constituted "good husbandry" and whether it restored the land to the condition required by the first

part of Lease Article IV § 16 (requiring Meadow Gold to "deliver up to Lessor possession of the premises . . . in substantial good order and condition . . . ."). *See Lindner v. Meadow Gold Dairies, Inc.*, --- F. Supp. 2d ---, 2007 WL 2381234, at *7 (D. Haw. Aug. 10, 2007).[2]

Presently before the court is SFG's Motion for Partial Summary Judgment as to a portion of Count V of Lindner's Complaint.[3]  Count V alleges that Meadow Gold breached the following Lease covenants by failing to restore the premises to pre-Lease conditions: Article VI § 16 "Surrender of Premises"; § 3 "Observance of Laws"; § 8 "Waste"; § 13 "Use of Premises and Practice of Good Husbandry"; and Article VI § 6(a) "Definition of Practice of Good Husbandry."

---

[2] The court previously issued two additional orders on motions for summary judgment. On February 7, 2007, SFG filed a Motion for Partial Summary Judgment as to Counts I and II of Lindner's Complaint, which the court granted in part and denied in part, finding that some, but not all of Lindner's claims for additional rent were time-barred under Hawaii law.  The court ordered the parties into arbitration as to the remaining claims for additional rent due.  *See generally Lindner*, 2007 WL 1430373.  Lindner and SFG both moved for partial summary judgment as to Lindner's claim for liquidated damages (Count III).  The court granted Lindner's Motion for Partial Summary Judgment and denied SFG's Motion for Partial Summary Judgment finding that Lindner was entitled to a liquidated damages payment because SFG prematurely terminated the Lease and SFG's breach was not excused by frustration or rendered null by Lindner's failure to provide notice of default.  *See Lindner*, 2007 WL 2320669.

Counts I, II, and III of Lindner's Complaint and all related counts in Meadow Gold's Third-Party Complaint, Counterclaim by SFG, and Cross-claim by Borden have settled.

[3] SFG's motion does not address the following claims: (1) the obligation to leave the premises "in substantial good order and condition, reasonable wear and tear and damage by the elements or other unavoidable casualty not herein required to be insured against excepted," under the first clause of Article IV § 16 of the Lease as alleged in Count V of the Complaint; and (2) the failure to remove certain improvements as alleged in Count IV of the Complaint.

Compl. ¶¶ 60-61. Lindner alleges that Meadow Gold "is required to restore the premises, including but not limited to the Carcass Pit, the Berms and Swales, and Other Restoration areas to their pre-Lease condition." Compl. ¶ 60.

The instant Motion for Partial Summary Judgment divides the Lease covenants raised in Count V into two groups: (1) "use" covenants (*i.e.* Article IV § 3 "Observance of Laws"; § 8 "Waste"; § 13 "Use of Premises and Practice of Good Husbandry"; and Article VI § 6(a) "Definition of Practice of Good Husbandry"); and (2) a "remove and restore" covenant (*i.e.* Article IV § 16 "Surrender of Premises"). As to the use covenants, SFG argues that any breach that occurred before July 19, 2000 is barred by the six-year statute of limitations. At the November 13, 2007 hearing, the parties agreed that the statute of limitations issue was moot because Lindner does not seek damages for alleged breaches of the "use" covenants.[4]

As to the 'remove and restore" covenant in Article IV § 16, SFG

---

[4] According to Lindner: "All of Plaintiff's remaining claims for damages stem not from Meadow Gold's inappropriate 'use' of the Property, but from breaches of the Surrender clause [Article IV § 16], including, *inter alia*, Meadow Gold's failure to remove improvements and restore the Property." Pl.'s Mem. in Opp'n 6-7 (footnote omitted). Lindner claims that he does not seek damages from any of the acts of poor stewardship that are allegedly barred by the statute of limitations; instead, the breaches described in SFG's motion are evidence of Meadow Gold's "overall failure to comply" with the Lease and "set the overall bigger-picture for their course of dealing, including breaches of provisions of the Lease for which damages are actually sought." *Id.* at 9.

claims that: the duty to remove improvements and restore the premises arises from the Lessor's election; the duty to restore the premises to pre-Lease condition extends only to the portions of the premises from which improvements have been removed; and that the cattle graveyard is not an improvement and therefore not subject to the obligation to remove and restore.

Lindner filed his Memorandum in Opposition on October 26, 2007, in which he argues that the Article IV § 16 surrender clause requires that the *entire* premises -- not just those portions of the premises affected by the removal of improvements -- be restored "to the condition they were in at the commencement of this Lease." Lease Art. IV § 16. Lindner claims that the burial areas, dirt mines, and landfill are subject to the obligation to restore, regardless of whether or not they are improvements.

SFG filed its Reply on November 2, 2007. Meadow Gold and Borden filed motions for joinder to SFG's Motion for Partial Summary Judgment with respect to part of Count V on October 23, 2007 and October 24, 2007, respectively. A hearing was held on November 13, 2007.

### III. <u>STANDARD OF REVIEW</u>

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.

R. Civ. P. 56(c).  The burden initially lies with the moving party to show that there is no genuine issue of material fact.  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  Nevertheless, "summary judgment is mandated if the non-moving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case.'"  *Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999) (*quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue is material if the resolution of the factual dispute affects the outcome of the claim or defense under substantive law governing the case.  *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001).  When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses[.]"  *Celotex*, 477 U.S. at 323-24.  "There is no genuine issue of fact if the party opposing the motion 'fails to make an adequate showing sufficient to establish the existence of an

element essential to that party's case, and on which that party will bear the burden of proof at trial.'"  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (*quoting Celotex*, 477 U.S. at 322).  Moreover, there is no genuine issue of material fact if, taking the record as a whole, a rational trier of fact could not find in favor of the non-moving party.  *Matsushita*, 475 U.S. at 586; *Taylor*, 880 F.2d at 1045.

## IV.  ANALYSIS

**A.**     **Restoration of Premises Under Lease Article IV § 16 Surrender Clause**

Article IV § 16 of the Lease, entitled "Surrender of Premises," contains two clauses relating to the condition of the land at the termination of the Lease.  The first clause states:

> At the expiration of the term or sooner termination, Lessee shall peaceably surrender and deliver up to Lessor possession of the premises, together with the possession of and title to all buildings and other permanent improvements of whatever kind or nature thereon, but not including automotive or portable machinery or equipment which in a dairy operation and related pasture use is customarily moved from place to place upon said premises, in substantial good order and condition, reasonable wear and tear and damage by the elements or other unavoidable casualty not herein required to be insured against excepted . . . .

Lease Art. IV § 16.[5]  Immediately following this first clause is a second clause, which states:

_____

[5] The court previously denied summary judgment to SFG as to whether Meadow Gold complied with the first clause of the surrender provision.  *See Lindner*, 2007 WL 2381234, at *8.

> provided, however, that in Lessor's discretion Lessor may
> require that all buildings, building pads, foundations, fences or
> other improvements constructed by Lessee during the term
> shall be removed and the premises restored, to the greatest
> extent possible, to the condition they were in at the
> commencement of this Lease.

*Id.*  Read together, these two clauses require that the Lessee surrender the property to the Lessor in two possible conditions: (1) "in substantial good order and condition, reasonable wear and tear and damage by the elements or other unavoidable casualty not herein required to be insured against excepted"; and (2) "to the greatest extent possible, to the condition they were in at the commencement of this Lease."  *Id.*

SFG argues that this second clause, beginning "provided, however," requires only that the Lessee restore to pre-Lease condition that portion of the premises affected by improvements that are removed at Lessor's election.  Lindner claims that the "remove and restore" clause applies to the *entire* premises. Lindner argues that the term "premises," as defined in the Lease, includes the entire property and that the restoration obligation applies to the "premises."[6]

_____

[6] The Lease defines "premises" as "the lands described and shown on <u>Exhibit 'A'</u> attached hereto and made a part hereof, bearing Tax Map Key Nos. 4-9-08: portion 1 and 4-9-08:03, containing a total area of approximately 170 acres ('premises')."  Lease Art. I § 1, attached as SFG's Ex. A.  It also includes the following: "<u>Definition of Premises</u>.  The word 'premises' when it appears herein includes that land hereby demised and all buildings and other improvements thereon."  Lease Art. VI § 6(c).

The court reviews the Lease "under the principles of contract law when the issue involves the interpretation of a lease provision." *Joy A. McElroy, M.D., Inc. v. Maryl Group, Inc.*, 107 Haw. 423, 429, 114 P.3d 929, 935 (Ct. App. 2005). "Absent an ambiguity, contract terms should be interpreted according to their plain, ordinary, and accepted sense in common speech." *Found. Int'l, Inc. v. E.T. Ige Const., Inc.,* 102 Haw. 487, 495, 78 P.3d 23, 31 (2003). To determine whether an ambiguity exists, the court "should look no further than the four corners of the document," and examine "whether or not particular words or phrases in themselves be uncertain or doubtful in meaning." *Id.* at 496-97, 78 P.3d at 32-33 (citations omitted). "A contract term or phrase is ambiguous only if it is capable of being reasonably understood in more than one way." *Wittig v. Allianz, A.G.*, 112 Haw. 195, 201, 145 P.3d 738, 744 (Ct. App. 2006).[7]

The Article IV § 16 surrender provision is not ambiguous. It is clear from a plain reading of the entire provision that the duties to remove

---

[7] According to the Lease:

> Because the terms of the Lease have been negotiated at arm's length between sophisticated parties represented by experienced counsel, the parties agree that any dispute as to the construction of this Lease shall be resolved by interpreting its terms according to their ordinary and everyday meaning, and not for or against any part by virtue of its role in negotiating or drafting this Lease.

Lease Art. VI § 13.

improvements and restore the premises entail a single obligation; that is, the

obligation to restore the premises to its pre-Lease condition is tethered to the

Lessor's election to have improvements removed.  Where the landlord so elects,

"all buildings, building pads, foundations, fences or other improvements

constructed by Lessee during the term shall be removed *and* the premises restored,

to the greatest extent possible, to the condition they were in at the commencement

of this Lease."  Lease Art. IV § 16.  Where the landlord does not elect to have

improvements removed, there is no corresponding obligation to restore the

affected portion of the land to the pre-Lease condition.

The meaning advanced by Lindner would lead to an unreasonable

interpretation of the Lease.  "In construing a lease we must avoid an unreasonable

interpretation if that can be done consistently with the tenor of the agreement and

choose the most obviously just interpretation as the presumed intent."  *Flint v.*

*MacKenzie*, 53 Haw. 626, 628-29, 500 P.2d 556, 558 (1972) (*quoting Broida v.*

*Hayashi*, 51 Haw. 493, 495-96, 464 P.2d 285 (1970)).  It would be unreasonable

to interpret the surrender provision as containing two *different* conditions of

general application which applied simultaneously to the entire premises.  It is

unreasonable and improbable that the Lessee should be required in all instances to

surrender the entire property both (1) "in substantial good order and condition,

13

reasonable wear and tear and damage by the elements or other unavoidable casualty not herein required to be insured against excepted"; *and* (2) "to the greatest extent possible, to the condition they were in at the commencement of this Lease." Lease Art. IV § 16. The entire premises cannot be surrendered in both conditions; the only way to give effect to both clauses is to read the "remove and restore" clause as applying only where improvements are removed.[8]

The court's construction of the surrender provision is supported by case law from other jurisdictions interpreting similar lease provisions. *See, e.g.*, *Leslie Pontiac, Inc. v. Novak*, 202 N.W.2d 114, 116 (Iowa 1972) ("Only in the event the removal option was exercised with respect to a particular alteration or improvement would that portion of the premises have to be restored to original condition. . . . Where tenant chooses to remove alterations and improvements he must restore the premises to their original condition; where he does not choose to

---

[8] Although the surrender provision is not ambiguous, even if it were susceptible of more than one meaning, the only reasonable construction is to limit the applicability of the "remove and restore" clause to the removal of improvements so that the two clauses of Article IV § 16 can both be given effect. This more reasonable construction is preferred. *See Amfac, Inc. v. Waikiki Beachcomber Inv. Co.*, 74 Haw. 85, 110, 839 P.2d 10, 25 (1992) ("Where the language of a contract is susceptible of two constructions, one of which makes it fair, customary and such as prudent men would naturally execute, while the other makes it inequitable, unusual, or such as reasonable men would not likely enter into, the interpretation which makes a fair, rational and probable contract must be preferred.") (citation and quotation signals omitted); *see also* Restatement (Second) Of Contracts § 203(a) (1981) ("[A]n interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect.").

remove them he must comply with the lease covenant to return those parts of the premises in good and substantial repair."); *Corbett v. Derman Shoe Co.*, 155 N.E.2d 423, 426 (Mass. 1959) (holding that the separate covenants "to repair" and to "deliver up in good order and condition" and the several covenants bearing on the lessee's obligation in this respect are to be construed together so as to give reasonable meaning to each of them); *Reilly Motors, Inc. v. Burroughs Corp.*, 35 Pa. D. & C.2d 520, 526 (Pa. Com. Pl. 1964) ("The reasonable construction . . . is that if lessee desires to remove a particular alteration or improvement then it must restore the premises to its prelease condition so far as that particular item is concerned."); *Civic Realty Co. v. New York Tel. Co.*, 190 N.Y.S.2d 3, 5-6 (Sup. Ct. 1959) (holding that a covenant to surrender the premises in as good condition as when granted, reasonable wear and tear excepted, is not equivalent to a covenant to restore the premises by the removal of improvements by the lessee).

Under the Lease, the Lessee is required to restore to pre-Lease condition only the portion of the premises affected by improvements that are to be removed at Lessor's election.  SFG's motion for summary judgment is GRANTED on this point.

## B.     The Cattle Graveyard Is Not an Improvement

SFG argues that the cattle graveyard is not an "improvement" as the

term is used in the Lease, and therefore, the duty to remove and restore at Lessor's

election does not extend to the cattle graveyard.  At the November 13, 2007

hearing, Lindner's counsel agreed that, based on the record as currently developed,

the cattle graveyard is not an improvement.[9]

The "remove and restore" provision of the surrender clause states:

"that in Lessor's discretion Lessor may require that *all buildings, building pads,*

*foundations, fences or other improvements constructed by Lessee* during the term

---

[9] Both parties raise previous statements made by counsel as evidence supporting their
various arguments.  For instance, Lindner's counsel conceded at a June 18, 2007 hearing that
"the carcass pit, in our position, is not an improvement."  Tr. of June 18, 2007 Hearing at 53,
attached as SFG's Ex. F.  Lindner, on the other hand, claims that SFG's counsel stated in a
January 4, 2001 letter to Lindner's counsel that with respect to the graveyard, "Meadow Gold
does not believe that the lease calls for the removal of the deteriorated bones from this area.  In
Meadow Gold's view, the grade and compaction characteristics of the area have been restored to
their pre-lease conditions."  Lindner's Ex. 9 at 1-2.  To the extent the parties seek to estop one
another from changing their positions, judicial estoppel is not appropriate in this circumstance.

"[W]here a party assumes a certain position in a legal proceeding, and succeeds in
maintaining that position, he may not thereafter, simply because his interests have changed,
assume a contrary position."  *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (citation
omitted).  Judicial estoppel "generally prevents a party from prevailing in one phase of a case on
an argument and then relying on a contradictory argument to prevail in another phase."  *Id.*
(citation omitted).  Lindner did not succeed in persuading the court to accept his earlier position
during the previous motions for summary judgment.  In ruling on SFG's Motion for Partial
Summary Judgment on Counts IV and V of the Complaint, the court did not decide whether the
cattle graveyard was an improvement; the court ruled that SFG did not show that it practiced
"good husbandry" as defined in the Lease and failed to show that it delivered the land to the
Lessor "in substantial good order and condition."  *See Lindner*, 2007 WL 2381234, at *8.
Further, the statements in the January 4, 2001 letter to Lindner's counsel were not a prior
proceeding and required no judicial determination.  "Absent success in a prior proceeding, a
party's later inconsistent position introduces no risk of inconsistent court determinations and thus
no threat to judicial integrity."  *New Hampshire*, 532 U.S. at 750-51 (citation and quotation
signals omitted).

shall be removed and the premises restored, to the greatest extent possible, to the condition they were in at the commencement of this Lease." Lease Art. IV § 16 (emphasis added). The enumerated list of items that Lessor may elect to have removed by the Lessee includes: buildings, building pads, foundations, fences, or other improvements. Of the preceding terms, the only one applicable to the cattle graveyard is the generic description "other improvements." The Lease does not define "improvements."

The general term "other improvements" follows the more specific terms "buildings," "building pads," "foundations," and "fences." Where general words follow specific words, "the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." *Holi v. AIG Hawaii Ins. Co., Inc.*, 113 Haw. 196, 204, 150 P.3d 845, 853 (Ct. App. 2007) (*quoting Richardson v. City & County of Honolulu*, 76 Haw. 46, 74, 868 P.2d 1193, 1201 (1994)).

Construing the general words "other improvements" to embrace objects similar to the enumerated "buildings," "building pads," "foundations," and "fences," necessarily excludes the cattle graveyard from the category "other improvements." The cattle graveyard, described as a "carcass pit," "boneyard," and burial site of at least 2,300 cows, is not similar to the other items listed in the

"remove and restore" clause.  "Buildings," "building pads," "foundations," and "fences," are structures affixed to the land and are wholly distinguishable from animal carcasses buried below the surface in trenches or pits.  Thus, the cattle graveyard is not an improvement as the term is used in the Lease.  The court GRANTS SFG's motion for summary judgment on this issue.

## V.  CONCLUSION

Based on the foregoing, the court GRANTS SFG's Motion for Partial Summary Judgment on Part of Count V of the Complaint, joined by Meadow Gold and Borden.  The court concludes that, under the Lease, the Lessee is required to restore to pre-Lease condition only the portion of the premises affected by improvements that are to be removed at Lessor's election.  Further, the cattle graveyard is not an "improvement" as the term is used in the Lease.

//

//

//

//

//

//

//

The claims remaining in Plaintiff's Complaint include Count IV and Count V.  Additionally, Count I of Meadow Gold's Third-Party Complaint against SFG, Count III of SFG's Counterclaim against Meadow Gold, and Borden's Cross-claims against SFG remain.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, November 15, 2007.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Lindner v. Meadow Gold Dairies, Inc.*, Civ. No. 06-00394 JMS/LEK, ORDER GRANTING THIRD-PARTY DEFENDANT SOUTHERN FOODS GROUP, L.P.'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON PART OF COUNT V OF PLAINTIFF'S COMPLAINT FILED JULY 19, 2006