IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

JEFFREY LINDNER,                        )      CIVIL NO. 06-00394 JMS-LEK
                                        )
          Plaintiff,                    )
                                        )
     vs.                                )
                                        )
MEADOW GOLD DAIRIES, INC.,              )
ETC.,                                   )
                                        )
          Defendant.                    )
_____ )


**ORDER GRANTING IN PART AND DENYING IN PART SOUTHERN FOODS GROUP, L.P.'S MOTION TO EXCLUDE THE TESTIMONY OF TIM O'BRYNE AND THOMAS D. GLANVILLE AND TO STRIKE THEIR REBUTTAL REPORTS AND THE REBUTTAL REPORT OF EMILE J. LE ROUX; DENYING JEFFREY S. LINDNER'S COUNTERMOTION; AND GRANTING IN PART AND DENYING IN PART SOUTHERN FOODS' MOTION TO EXCLUDE THE TESTIMONY OF THOMAS D. GLANVILLE AND JAMES E. HALLSTROM, JR., TO STRIKE THEIR REPORTS SUBMITTED ON OCTOBER 22, 2007, AND TO STRIKE THE REPORTS OF S.K. DJOU AND EMILE J. LE ROUX SUBMITTED ON OCTOBER 22, 2007**

Before the Court are: Third-Party Defendant/Counter Claimant/Cross Defendant Southern Foods Group, L.P.'s ("Southern Foods") Motion to Exclude the Testimony of Tim O'Bryne and Thomas D. Glanville and to Strike Their Rebuttal Reports and the Rebuttal Report of Emile J. Le Roux, filed September 28, 2007 ("O'Bryne Motion");[1] Plaintiff Jeffrey S. Lindner's ("Plaintiff") countermotion to the O'Bryne Motion ("Countermotion"), filed

---

[1] Defendant/Cross Claimant Borden, Inc. ("Borden") and Defendant/Third-Party Plaintiff/Counter Defendant Meadow Gold Dairies, Inc. ("Meadow Gold") filed joinders in the O'Bryne Motion on October 19, 2007 and October 23, 2007, respectively.

November 9, 2007; and Southern Foods' Motion to Exclude the Testimony of Thomas D. Glanville and James E. Hallstrom, Jr., to Strike Their Reports Submitted on October 22, 2007, and to Strike the Reports of S.K. Djou and Emile J. Le Roux Submitted on October 22, 2007, filed November 9, 2007 ("Hallstrom Motion").[2] Plaintiff filed his memorandum in opposition to the Hallstrom Motion on December 27, 2007.[3]  Southern Foods filed replies to the O'Bryne Motion and the Hallstrom Motion on January 4, 2008. The Court finds these matters suitable for disposition without a hearing pursuant to Rule LR7.2(d) of the Local Rules of Practice of the United States District Court for the District of Hawaii. After careful consideration of the motions, supporting and opposing memoranda, and the relevant legal authority, and for the reasons set forth below, Southern Foods' O'Bryne Motion is HEREBY GRANTED IN PART AND DENIED IN PART, Plaintiff's Countermotion is HEREBY DENIED, and Southern Foods' Hallstrom Motion is HEREBY GRANTED IN PART AND DENIED IN PART.

## BACKGROUND

Meadow Gold, as the lessee, and Amfac Property Development Corporation ("Amfac"), as the lessor, entered into a

---

[2] Borden and Meadow Gold each filed joinders in the Hallstrom Motion on January 10, 2008.

[3] On January 10, 2008, Plaintiff filed a motion to supplement his memorandum in opposition to the Hallstrom Motion. This Court granted the motion on March 19, 2008.

lease dated October 1, 1988 (the "Lease") for the premises identified by Tax Map Key Numbers 4-9-08:01 and 4-9-08:03 (the "Premises").  Meadow Gold operated a dairy farm on the Premises. Amfac later sold the Premises to Plaintiff and assigned its interest in the Lease to him.  The district judge has found that the Lease was terminated as of December 31, 2000.  After the closure of the dairy farm, various entities, including Geolabs, Inc. ("Geolabs") and GeoEngineers, prepared reports about the events that occurred during the closure and the condition of the Premises thereafter.

Plaintiff filed the instant action on July 19, 2006. The Complaint alleges, *inter alia*, that Meadow Gold breached the terms of the Lease by maintaining a cow graveyard on the Premises (the "Boneyard").  The Complaint argues that this constituted a breach of the covenant to observe all law, the covenant not to waste, the covenant to practice good husbandry, and the covenant concerning the surrender of the Premises.  According to Plaintiff, Meadow Gold is required to remove the carcasses from the Boneyard and to restore the areas in and around the Boneyard to their pre-Lease condition.  The Complaint also alleges that Meadow Gold breached the terms of the Lease by storing, using, and disposing of various hazardous materials on the Premises.

I.    **The Parties' Expert Disclosures**

          According to this Court's November 29, 2006 Rule 16
Scheduling Order, the plaintiffs' expert disclosure deadline was
April 2, 2007 and the defendants' expert disclosure deadline was
May 2, 2007.  Rebuttal expert disclosures were due thirty days
after the opposing party's disclosure.

     A.    **Plaintiff's April 2007 Disclosures**

          Plaintiff filed his Expert Witness Disclosure on
April 2, 2007 and identified S.K. Djou and Emile Le Roux as his
experts.  [Exh. K to O'Bryne Motion (Plaintiff Jeffrey Lindner's
Expert Disclosure (4/2/07)).]  Plaintiff did not identify experts
to address: 1) the contamination of the soil because of the
burial of animal carcasses; 2) whether the Boneyard or any other
Meadow Gold practice constituted improper livestock management;
or 3) the proper handling of hazardous materials.

          1.    **S.K. Djou**

          Djou is a civil and geotechnical engineer.  Plaintiff
stated that Djou will testify to "his geotechnical findings and
opinions concerning the adequacy of Meadow Gold Dairies, Inc.'s
site restoration efforts . . . ."  [Id. at 2.]  According to
Djou, there are "four major areas and two minor areas of
deficiencies in site restoration".  [Exh. M to O'Bryne Motion

4

(Djou April 2007 Report[4]) at 3.]  Djou identified the Boneyard as one of the areas with major deficiencies in restoration.

    **2.**   **Emile J. Le Roux**

Le Roux is a cost estimator, who will testify regarding his estimate of the cost to restore the Premises to its pre-Lease condition, including the removal of all remaining improves that Meadow Gold added to the Premises.  [Exh. K to O'Bryne Motion (Plaintiff Jeffrey Lindner's Expert Disclosure (4/2/07)) at 3.] The Le Roux April 2007 Report identified thirteen "improvements" which need to be removed.  It stated that his "preliminary assessment" was that it would cost between $1.5 million to $2.0 million to restore the Premises.  [Exh. L to O'Bryne Motion (Le Roux April 2007 Report) at 3.]  Le Roux did not specify how he arrived at these figures.

   **B.**   **Southern Foods' May 2007 Disclosures**

Southern Foods filed its Fed. R. Civ. P. 26(a)(2) Disclosure of Expert Testimony on May 2, 2007, and identified James Kwong,[5] Eric Lee, Brant Tanaka, and Russell Yost as its experts.

    **1.**   **Eric Lee**

---

[4] The Court will refer to the expert witnesses' reports by the date of their disclosure, rather than the date of their preparation.

[5] The Kwong May 2007 Report is not at issue in these motions.

Lee is a cost estimator.  He analyzed each "improvement" to be removed identified in the Le Roux April 2007 Report.  Lee opined that Le Roux's estimate of $1.5 to $2.0 million to restore the Premises "is speculative and not supported by adequate facts or reasoning[,]" and "is inadequate, insufficient, and unsupported."  [Exh. O to O'Bryne Motion (Lee May 2007 Report) at 1.]  Further, the wide range "shows the large amount of contingencies and speculations made in preparing the Preliminary Construction Cost Estimate."  [Id. at 3.]

### 2. **Russell S. Yost**

Yost is a professor of soil science at the University of Hawaii at Manoa.  He opined that the burial of animal carcasses "constitute[s] neither a hazard of nutrient nor biological contamination to the soil, groundwater and surface water but, in fact, increase[s] the subsequent value of the soil as a media for normal plant growth due to the contribution of otherwise deficient nutrients[,] calcium and phosphorous."  [Exh. P to O'Bryne Motion (Yost May 2007 Report) at 3.]

### 3. **Brant Tanaka**

Southern Foods submitted the Closure Report, dated January 31, 2001, with additional information from Brant Tanaka, who oversaw the closure of the Premises.  The Closure Report states that "Meadow Gold followed standard agricultural practices and good husbandry in burying these carcasses."  [Exh. D to

6

O'Bryne Motion (Closure Report) at 8.]

###### C.    **Plaintiff's Rebuttal Disclosures**

Plaintiff filed his Rebuttal Expert Disclosures on June 1, 2007.  He included a new report from Djou to rebut the Kwong May 2007 Report.[6]  Plaintiff also identified Tim O'Bryne and Thomas Glanville to rebut the Yost May 2007 Report and the Closure Report, with Tanaka's additional comments.  By the agreement of the parties, Plaintiff filed another Rebuttal Expert Disclosure on June 4, 2007 with a new report from Le Roux to rebut the Lee May 2007 Report.

###### 1.    **Tim O'Bryne**

O'Bryne is "a livestock handling consultant specializing in, *inter alia*, standard operating procedures of livestock operations, cattle handling and safety, and federal and state laws pertaining to the production and handling of livestock."  [Exh. Q to O'Bryne Motion (Plaintiff Jeffrey S. Lindner's Rebuttal Expert Disclosures (6/1/07)) at 2.]  Plaintiff stated that O'Bryne "will testify on matters relating to the livestock procedures including burial of carcasses and animal husbandry."  [Id.]  O'Bryne's report addresses three issues: whether the Boneyard is consistent with "[g]enerally-accepted Standard Operating Procedures (SOPs) embraced by the North

---

[6] The Djou June 2007 Report is not at issue in the O'Bryne Motion.

American dairy and beef production industry[;]" whether the lessee was obligated to obtain the lessor's consent to maintain the Boneyard; and whether the operation of the Boneyard violated the Lease and the applicable state rules and guidelines.  [Exh. T to O'Bryne Motion (O'Bryne June 2007 Report) at 1.]

### 2.   **Thomas D. Glanville**

Glanville is a professor in the Department of Agricultural & Biosystems Engineering at Iowa State University. Plaintiff states that Glanville "will testify on matters relating to agricultural engineering, soil contamination from the carcass pit and livestock handling procedures."  [Exh. Q to O'Bryne Motion (Plaintiff Jeffrey S. Lindner's Rebuttal Expert Disclosures (6/1/07)) at 2.]  The Glanville June 2007 Report states that it presents his "findings and opinions concerning the dairy cattle burial site."  [Exh. S to O'Bryne Motion (Glanville June 2007 Report) at 1.]  Glanville also addresses whether the nitrogen released by the carcasses poses a problem.

### 3.   **Le Roux's June 2007 Report**

Although Plaintiff states that the Le Roux June 2007 Report rebuts the Lee May 2007 Report, Le Roux does not respond directly to Lee's criticism of his original report.  For example, he does not defend the cost range in the original report, but states that the estimate is now $1,863,000.  [Exh. R to O'Bryne Motion (Le Roux June 2007 Report) at 1.]  He also fills in

8

further details supporting the list of improvements identified in the Le Roux April 2007 Report.

### 4.   **James E. Hallstrom, Jr.**

On July 3, 2007, Plaintiff filed another Rebuttal Expert Disclosure, identifying James E. Hallstrom, Jr., as his expert.[7] Hallstrom is an appraiser, and Plaintiff stated that he would testify "on matters including but not limited to providing a reasonable range of minimum market rent and percentage rent and for [sic] the Property as of specific retrospective dates of value and liquidated damages valuation." [Plaintiff Jeffrey S. Lindner's Expert Disclosure (7/3/07) at 2.]

### D.   **Southern Foods' August 2007 Disclosures**

This Court's June 21, 2007 Amended Rule 16 Scheduling Order extended the defendants' expert disclosure deadline to August 8, 2007 and again provided that the deadline to disclose rebuttal experts was thirty days after the opposing party's disclosure.  It also set trial to commence on January 8, 2008.

On August 8, 2007, Southern Foods filed another Fed. R.

---

[7] Plaintiff did not file this disclosure within thirty days of Southern Foods' May 2007 disclosures.  Plaintiff did not obtain leave of court to file the disclosure beyond the deadline and there is no indication in the record that the parties agreed to allow Plaintiff to file the July 2007 disclosure.  Southern Foods, however, has not moved to strike the Hallstrom July 2007 Report.

Civ. P. 26(a)(2) Disclosure of Expert Testimony,[8] with updated reports from Kwong, Lee, Yost, and Tanaka.  Southern Foods also identified Uson Y. Ewart as an additional expert.[9]

### 1.  James Kwong

Kwong is a civil and geotechnical engineer.  He reviewed the reports by Geolabs and GeoEngineers and opined that Geolabs' conclusion that the fill work in the vicinity of the Boneyard was inadequate was not supported by credible evidence. [Exh. L to Hallstrom Motion (Kwong August 2007 Report) at 7.] Kwong noted that Geolabs made test holes at various locations, but did not record them.  Kwong opined that this "has irreversibly and adversely impacted the credibility of subsequent geotechnical exploration of subsurface conditions pertaining to site conditions created by Meadow Gold Dairies." [Id. at 6.]  He also identified inconsistencies, deficiencies, and discrepancies in GeoEngineers' report and stated that its opinion on uncompacted fill was not supported by the available technical data.  Thus, he disagreed with Djou's endorsement of GeoEngineers' estimated volume of "uncompacted fill" and opined that "the volume of animal burial re-worked soil is approximately

---

[8] Borden filed its Rule 26(a)(2) Disclosure of Expert Witnesses and Written Reports on October 19, 2007.  Borden's disclosure is identical to Southern Foods' August 8, 2007 disclosure.

[9] The Ewart report is not at issue in these motions.

3,705 cubic yards, **not** 20,000 yards." [<u>Id.</u> at 22 (emphasis in original).]

### 2.  <u>Lee August 2007 Report</u>

Lee issued a new report after reviewing, *inter alia*, the Le Roux April 2007 and June 2007 Reports.  In Lee's opinion, it will cost $240,099.20 to restore the Premises.  [Exh. M to Hallstrom Motion (Lee August 2007 Report) at 1.]  Lee opined that Le Roux's higher estimate was "based on inadequate research, erroneous assumptions, inaccurate quantities and excessive unit prices." [<u>Id.</u> at 2.]

### 3.  <u>Yost August 2007 Report</u>

Yost issued a new report after reviewing, *inter alia*, the O'Bryne and Glanville June 2007 Reports.  Yost discussed the effect of the Boneyard on the Premises and opined that "the normal decomposition products of dead animals are unlikely to reach groundwater because the soil does not allow water and drainage from rainfall to pass through the soil into the groundwater." [Exh. N to Hallstrom Motion (Yost August 2007 Report) at 2.]  Further, even if there were some seepage into the groundwater, it would not affect the stream because it is losing water to the surroundings.  [<u>Id.</u>]  Yost estimated that there were 2,423 animals buried at the site, 1,400 of which were small calves.  [<u>Id.</u> at 5.]  He stated that, in light of the "generation time of bacteria" and the soil's physical properties, "the animal

flesh will be consumed by the bacteria" and "dentrification will result in the harmless release of the protein-derived nitrogen into the atmosphere." [Id. at 6.]

### E.   Plaintiff's October 2007 Rebuttal Disclosures

On September 7, 2007, this Court issued an order granting Plaintiff's Ex Parte Motion to Extend Time to Disclose Rebuttal Expert Reports, filed September 6, 2007.  The Court gave Plaintiff until October 22, 2007 to file his expert rebuttal reports.  Plaintiff filed his Expert Disclosures on October 22, 2007, with new reports from: Djou to rebut Kwong's report; Glanville to rebut Yost's, Kwong's, and Tanaka's reports; Le Roux, to rebut Lee's report; and Hallstrom, to rebut "statements made about property values."  [Exh. P to Hallstrom Motion (Plaintiff Jeffrey S. Lindner's Expert Disclosures (10/22/07)) at 2.]

### 1.   Djou October 2007 Report

Plaintiff states that Djou rebuts Kwong's report. [Id.]  The report is based upon "new factual data" from a recent trenching exploration.  [Exh. Q to Hallstrom Motion (Djou October 2007 Report) at 2.]  Djou's firm used the data to calculate the number of cows they believed they encountered on the Premises. Djou concludes that "the total quantity of fills that can be attributed to the dead animal burial activities should be at least 28,320 CY." [Id. at 6.]

### 2. __Glanville October 2007 Report__

Plaintiff states that Glanville rebuts Yost's, Kwong's, and Tanaka's reports.  [Exh. P to Hallstrom Motion (Plaintiff Jeffrey S. Lindner's Expert Disclosures (10/22/07)) at 2.] Plaintiff's disclosure included a September 6, 2007 report by Glanville and an October 18, 2007 addendum, supplementing the September report.[10]  Glanville states that the addendum is "based primarily on new information."  [Exh. R to Hallstrom Motion (Glanville October 18, 2007 Addendum) at 1.]  He also notes that further testing would be helpful and suggests that seepage is a possibility.  [__Id.__ at 2-3.]

### 3. __Le Roux October 2007 Report__

Plaintiff states that Le Roux rebuts Lee's report. [Exh. P to Hallstrom Motion (Plaintiff Jeffrey S. Lindner's Expert Disclosures (10/22/07)) at 2.]  The report includes a discussion of "ADDITIONAL WORK NOT PREVIOUSLY KNOWN".  [Exh. S to Hallstrom Motion (Le Roux October 2007 Report) at 1-2.]  The additional work is Djou's work, and, based on Djou's report, Le Roux provides a new cost estimate of $2,030,000 to $2,384,000. [__Id.__ at 3.]

---

[10] Insofar as Plaintiff disclosed the September 6, 2007 report and the October 18, 2007 addendum together on October 22, 2007, the Court will refer to them collectively as "the Glanville October 2007 Report".  When necessary, the Court will refer to them individually as "the Glanville September 6, 2007 Report" and "the Glanville October 18, 2007 Addendum".

### 4. __Hallstrom October 2007 Report__

Plaintiff states that Hallstrom rebuts "statements made about property values." [Exh. P to Hallstrom Motion (Plaintiff Jeffrey S. Lindner's Expert Disclosures (10/22/07)) at 2.] Hallstrom offers his opinions about the value of the Premises based on the possible future uses. [Exh. T to Hallstrom Motion (Hallstrom October 2007 Report) at 1-2.]

## II. __O'Bryne Motion__

In the O'Bryne Motion, Southern Foods seeks to strike the June 2007 rebuttal reports of O'Bryne, Glanville, and Le Roux and to exclude O'Bryne's and Glanville's testimony at trial. Southern Foods argues that those rebuttal reports are an attempt to introduce new expert testimony that Plaintiff should have disclosed in their original expert disclosures. Plaintiff has the burden of proving that the burial of animal carcasses on the Premises contaminated the soil and was not consistent with the practices of good husbandry. Thus, Plaintiff should have identified experts in these areas before the April 2, 2007 deadline and he cannot introduce such experts under the guise of rebuttal. Southern Foods also contends that the Le Roux June 2007 Report attempts to add essential information which he should have included in his original report. Southern Foods notes that the Le Roux June 2007 Report does not respond to Lee's criticism of the Le Roux April 2007 Report. Rather, using the Lee May 2007

14

Report as a roadmap, it "lists the missing and critical details". [Mem. in Supp. of O'Bryne Motion at 14.]  Further, O'Bryne cannot be a rebuttal expert because he apparently did not review the reports he allegedly rebuts, and Glanville only relied on the Closure Report and the Yost Report for background information.

## III. Countermotion

Plaintiff's Countermotion is essentially a memorandum in opposition to the O'Bryne Motion and a motion to amend the scheduling order if the Court is inclined to exclude the June 2007 reports by O'Bryne, Glanville, and Le Roux.

### A.   Opposition to O'Bryne Motion

Plaintiff argues that the O'Bryne and Glanville June 2007 Reports are proper rebuttal reports and the Le Roux June 2007 Report is proper either as a rebuttal report or a supplemental report.  Even if their reports do not directly rebut the opinions of Southern Foods' experts, they rebut evidence on the same subject matter.  Plaintiff argues that he does not have the burden of proving good husbandry because Southern Foods raised it as an affirmative defense in its Memorandum in Support of its Motion for Partial Summary Judgment on Counts IV and V of the Complaint, Count I of the Third Party Complaint, and Count III of the Counterclaim, filed April 20, 2007 ("4/20/07 Summary Judgment Motion").  Southern Foods alleged that, because the practice of burying animal carcasses is consistent with "good

husbandry", it was exempted from having to restore the Boneyard portion of the Premises.

Even assuming, *arguendo*, that Plaintiff's disclosures were improper as rebuttals, Southern Foods was not diligent in bringing any noncompliance to the Court's attention. Southern Foods waited almost four months after Plaintiff's rebuttal disclosures before filing the O'Bryne Motion. Plaintiff also argues that any error was harmless and that the reports should be admitted because Southern Foods has reviewed them and its experts have rebutted them. Southern Foods also scheduled depositions of O'Bryne and Glanville. Further, sanctions are not appropriate because the testimony is necessary to rebut Southern Foods' affirmative assertion of good husbandry and there is no prejudice because trial is not until June 3, 2008 and the discovery deadline is April 4, 2008.

**B.    Motion to Amend Scheduling Order**

If the Court is inclined to find that the reports are not rebuttal reports, Plaintiff seeks an extension of his expert disclosure deadline to June 1, 2007. Plaintiff argues that he was diligent in disclosing the reports. The issue of good husbandry did not come up until Southern Foods filed the 4/20/07 Summary Judgment Motion; and the O'Bryne and Glanville June 2007 Reports did not become necessary until then. Plaintiff did not request an extension of the original expert disclosure deadline

16

because he had no indication that his rebuttal disclosures were improper.  Finally, he reiterates that the other parties will not be prejudiced if the Court allows the June 2007 reports by O'Bryne, Glanville, and Le Roux to stand.

## IV.  O'Bryne Motion Reply

Southern Foods points out that it did not raise the issues of soil contamination and violation of the "use covenants".  The Complaint alleges that Meadow Gold was required to restore the Premises to its pre-Lease condition, including, inter alia, the Boneyard, and that it breached the Lease covenants, including the covenants regarding waste and good husbandry, by failing to restore the Premises.  [Complaint at ¶¶ 60-62.]  The Complaint also alleged that the lessee stored, used, and disposed of various hazardous substances on the Premises and was required to remove them and clean them up.  [Complaint at ¶ 37.]  Southern Foods notes that, in response to its motion for summary judgment on statute of limitations grounds, Plaintiff abandoned his claims regarding the use covenants and focused on the breaches of the surrender clauses.  See Lindner v. Meadow Gold Dairies, Inc., Civil No. 06-00394 JMS/LEK, 2007 WL 3403534, at *2 (D. Haw. Nov. 15, 2007) ("At the November 13, 2007 hearing, the parties agreed that the statute of limitations issue was moot because Lindner does not seek damages for alleged breaches of the 'use' covenants.").  Southern Foods argues, however, that this

17

did not shift the burden of proof regarding good husbandry to Southern Foods.

Southern Foods argues that the Le Roux June 2007 Report cannot be a supplement because it replaces the Le Roux April 2007 Report and is based almost entirely on information that was available prior to the April report.  The April report was only a preliminary report, which is not sufficient to satisfy the requirements under Rule 26.  Supplemental reports cannot be used to fix problems in the original reports.

With regard to the O'Bryne and Glanville June 2007 Reports, even if there are portions of each report that are rebuttal in nature, the entire report must be rebuttal in nature.  O'Bryne's legal opinions about compliance with state and federal regulations and the terms of the Lease do not respond to the reports given by Southern Foods' experts.

Southern Foods argues that it has been prejudiced by Plaintiff's untimely disclosures, which have resulted in the marked increase in the number and size of expert reports, and which made another full round of expert work unavoidable.  This delayed all aspects of the case.  Thus, time to respond to the new experts could not fully cure the prejudice that Southern Foods suffered.

Finally, Southern Foods argues that the Court should deny Plaintiff's request to amend his original expert disclosure

18

deadline.  Plaintiff has not shown good cause for the amendment.
Plaintiff alleged claims based on the violation of the use
covenants his Complaint.  He did not abandon those claims until
after the April 2, 2007 expert disclosure deadline, and therefore
he should have obtained experts to support them.

## V.   **Hallstrom Motion**

Southern Foods argues that Plaintiff's October 2007
reports are not proper rebuttal because they do not address the
facts brought out in Southern Foods' reports.  Plaintiff's
October 2007 reports are new reports, which Plaintiff should have
disclosed prior to the April 2, 2007 deadline.  Plaintiff bears
the burden of proof and he was therefore required to disclose his
experts' opinions on the key issues before Southern Foods was
required to make its disclosures.  Further, Plaintiff's October
2007 reports rely on new data which Plaintiff could have
discovered earlier.  Plaintiff could have conducted the
additional excavation tests at any time after the termination of
the Lease.  Southern Foods argues that he should have known that
further analysis would be desirable because Geolabs recommended
in 2001 that "consideration should be given to the performance of
additional subsurface exploration."  [Exh. M to O'Bryne Motion
(Djou April 2007 Report) at 4.]  In addition, Hallstrom's report
is the first time Plaintiff submitted an appraisal and Hallstrom
does not respond to any previously disclosed evidence.

Similarly, Southern Foods contends that Plaintiff's October 2007 reports are not supplemental reports, which are only necessary when information in the original reports are incorrect or complete.  Supplementation does not allow a party to offer new opinions.

Plaintiff's untimely disclosures were neither justified nor harmless.  The late disclosure was not justified because Plaintiff was not unfairly surprised by Southern Foods' experts and Plaintiff should have reasonably anticipated the need for this type of expert testimony before Plaintiff's original expert disclosure deadline.  Southern Foods therefore contends that the automatic Federal Rule of Civil Procedure 37 sanction should apply and that the Court should exclude the testimony and strike the reports.

## VI.   **Memorandum in Opposition to the Hallstrom Motion**

After the Court extended Plaintiff's rebuttal disclosure deadline to October 22, 2007, Plaintiff retained a firm to conduct further excavation and analysis of the Boneyard. Based on the results, Plaintiff's rebuttal experts opined that, contrary to the reports of Southern Foods' experts, the site has not been well remediated.  Plaintiff's rebuttal experts also disagreed with Southern Foods' experts regarding the volume of fill in the Boneyard and the effect of the elevated levels of chemical concentration at the site.  Plaintiff identifies various

20

points in the Glanville September 2007 Report and October 2007
Addendum which rebut points in the Yost August 2007 report.
Further, the Glanville September 6, 2007 Report references Yost's
and Kwong's report.  The Hallstrom October 2007 Report is in
rebuttal to Yost's claim in his May 2007 and August 2007 Reports
that the Boneyard contributed value to the Premises.  Plaintiff
also argues that the Djou and Le Roux October 2007 Reports are
proper rebuttal to Kwong's and Lee's reports, as well as proper
supplementation of their prior reports based on information
obtained during the discovery process, including the recent
excavation.

        Based on additional investigation, Djou concluded that
his previous opinion of the inadequate fill in the Boneyard was
incorrect; the Boneyard only accounts for 394 dead cows and the
several hundred others estimated by Yost must be buried in other
locations on the Premises.  This affected the estimate for the
amount of remediation necessary.

        The Le Roux October 2007 Report is proper rebuttal of
the Lee August 2007 Report and proper supplementation of Le
Roux's prior reports.  Based on additional investigation, Le Roux
concluded that his calculations of the amount of necessary soil
removal and recompaction were incorrect and that there are
additional actions which are needed to remediate the Premises.

        If the October 2007 reports are not rebuttal in nature,

Plaintiff still urges the Court to deny the Hallstrom Motion
because Plaintiff's error was substantially justified and
harmless.  Plaintiff contends that the timing of the October 2007
disclosures was substantially justified because there was a
dispute between Plaintiff's and Southern Foods' experts regarding
several issues, including the adequacy of compaction and the
level of decomposition of the animal remains.  Plaintiff sought
an extension of time to file the rebuttal reports because he
wanted to conduct additional field investigation and he argues he
was diligent in looking for a firm to conduct the work.  The
additional field work yielded unanticipated information which
required Plaintiff's experts to amend their reports.  Further,
the other parties were not prejudiced or surprised by the
disclosure because they were all on notice that Plaintiff was
going to conduct extra field work and Plaintiff offered them the
opportunity to inspect the results.  There was no disruption to
the trial schedule and there is no indication that the allegedly
untimely disclosures were made in bad faith.

VII. **Hallstrom Motion Reply**

        In addition to reiterating many of the arguments it
raised in its prior filings, Southern Foods notes that
Hallstrom's statements regarding the market value of the Premises
go beyond Yost's statements, which were limited to the
agricultural value of the Premises.  Southern Foods contends that

22

to allow the practice Plaintiff employed here, *i.e.* filing preliminary reports followed by supplemental reports, would mean that there is no finality to expert reports because parties can continually supplement their reports to buttress their case.

Southern Foods claims that it is prejudiced by the new reports because it would have the opportunity to inspect the excavation work only after it has submitted its expert reports. Thus, their experts cannot conduct their own excavation work or address the methodology of Plaintiff's expert reports.  To allow another full round of expert repots would be inherently prejudicial.  Even though the untimely disclosure occurred some time before trial, it still disrupted the court's schedule and the other parties' schedule.  Finally, Southern Foods argues that exclusion is an appropriate sanction, not just to ameliorate prejudice, but to punish Plaintiff and deter future dilatory conduct.

## **DISCUSSION**

Federal Rule of Civil Procedure 26 governs the disclosure of expert testimony.  Pursuant to Rule 26(a)(2)(A), parties must disclose any person who they may call as an expert witness during trial.  If the party specifically employed or retained the witness to give expert testimony in the case, or if the witness is an employee of the party and the employee's duties regularly involve giving expert testimony, the expert disclosure

23

must include a report by the witness.  See Fed. R. Civ. P.
26(a)(2)(B).  The report must contain, *inter alia*, "a complete
statement of all opinions to be expressed and the basis and
reasons therefor; [and] the data or other information considered
by the witness in forming the opinions[.]"  Id.  The court
directs the timing and sequence of expert disclosures, but
rebuttal expert reports are due thirty days after the opposing
party's expert disclosure.  See Rule 26(a)(2)(C).

## I.   Rebuttal Reports

Rule 26(a)(2)(C) "defines rebuttal experts as
presenting 'evidence [that] is **intended solely** to contradict or
rebut evidence on the same subject matter identified' by an
initial expert witness . . . ."  TC Sys. Inc. v. Town of Colonie,
New York, 213 F. Supp. 2d 171, 179 (N.D.N.Y. 2002) (some
alterations in original); see also Great Am. Ins. Co. of New York
v. Vegas Constr. Co., No. 2:06-cv-00911-BES-PAL, 2007 WL 2375056,
at *4 (D. Nev. Aug. 15, 2007) (same).  The reports which are at
issue in the instant motions were presented as Plaintiff's
rebuttal reports.  Southern Foods argues that the Court should
strike the reports and, where applicable, exclude the experts'
testimony because the reports are not proper rebuttal.  Southern
Foods contends that they are direct reports which Plaintiff
should have produced by his April 2, 2007 expert disclosure
deadline.

24

A.    **June 2007 Reports**

1.    **Le Roux Report**

Plaintiff states that he does not waive the argument that Le Roux's June 2007 Report was a proper rebuttal report. [Mem. in Supp. of Countermotion at 15 n.6.]  The Countermotion, however, does not include any analysis supporting Plaintiff's claim that the Le Roux June 2007 Report is a proper rebuttal report; it only analyzes the report as a supplemental report. The Court therefore finds that Plaintiff did waive the argument that the Le Roux June 2007 Report is proper as a rebuttal report.

2.    **O'Bryne and Glanville Reports**

Southern Foods argues that the O'Bryne and Glanville Reports are direct expert reports because Plaintiff bears the burden of proof on the issues of animal husbandry and the alleged contamination caused by the Boneyard.

The mere fact that Plaintiff designated only rebuttal experts on these issues is not sufficient grounds to strike the O'Bryne and Glanville June 2007 Reports and exclude their testimony.  See <u>Johnson v. Grays Harbor Cmty. Hosp.</u>, No. C06-5502BHS, 2007 WL 4510313, at *1 (W.D. Wash. Dec. 18, 2007) ("the Court will not exclude Plaintiff's rebuttal experts from testifying solely because Plaintiff designated only rebuttal experts").  As O'Bryne and Glanville are designated as rebuttal experts, however, their testimony is limited.  At trial, O'Bryne

25

and Glanville cannot testify in Plaintiff's case-in-chief, and they cannot testify unless and until Southern Foods' experts testify as to the opinions for which O'Bryne and Glanville have been designated as rebuttal experts.  See id. at *2.

Southern Foods argues that O'Bryne and Glanville cannot be rebuttal experts because O'Bryne did not review the Yost May 2007 Report and the Closure Report, which he allegedly rebuts, and Glanville only relied on those reports for background information.  The Court disagrees.  In Johnson, the court noted that the plaintiff's proffered rebuttal expert witnesses did not state in their reports that they reviewed the reports of the defendants' experts.  The court did not strike the reports on that ground, but did question whether the plaintiff's experts were actually prepared to limit their testimony to rebuttal.  See id.; see also Biomet Orthopedics, Inc. v. Tact Med. Instruments, Inc., No. 3:01 CV 895 PS, 2004 WL 5499504, at *2 (N.D. Ind. Apr. 7, 2004) ("First, while it is true Dr. Keegan's supplemental report does not mention Mr. Sims or his expert report, there is no requirement that Dr. Keegan mention Mr. Sims by name when offering opinions to contradict or rebut those offered by Mr. Sims.").  Further, rebuttal evidence "is intended solely to contradict or rebut evidence on the same subject matter identified by another party under paragraph (2)(B)[.]"  Fed. R. Civ. P. 26(a)(2)(C) (emphasis added).  Thus, the O'Bryne and

26

Glanville June 2007 Reports are proper rebuttal reports if they contradict or rebut the subject matter of the Yost May 2007 Report and the Closure Report.

The Yost May 2007 Report states, *inter alia*, "the choice to bury the carcasses is, in fact, an excellent one[.]" [Exh. P to O'Bryne Motion (Yost May 2007 Report) at 1.]  In its discussion of the Boneyard, the Closure Report states that "Meadow Gold followed standard agricultural practices and good husbandry in burying these carcasses." [Exh. D to O'Bryne Motion (Closure Report) at 8.]

The Court finds that the following portion of the O'Bryne June 2007 Report contradicts or rebuts those portions of the Yost May 2007 Report and the Closure Report:

> Generally-accepted Standard Operating Procedures (SOPs) embraced by the North American dairy and beef production industry, as they pertain to this case, applicable to the time period in question (1988 to the present day), are as follows:
>
>> 1.   Any person or entity that, in good conscience, operates a CAFO (confined animal feeding operation) consisting of a conventional dairy facility **would**, with respect to local and federal Environmental Protection (EP) and Department of Health (DOH) regulations:
>>> a)   contact the nearest available deadstock removal company to retrieve a carcass for rendering;
>>> b)   if rendering is not an option, develop a suitable system for the proper disposal of dead cow carcasses (composting, deep pit burial, incineration, authorized deposit at local landfill site).

27

>          2.   Any person or entity that, in good
>     conscience, operates a CAFO **would not**, with
>     respect to local and federal EP and DOH
>     regulations, dispose of dead cow carcasses in
>     the manner and quantity described in this
>     case.

[Exh. T to O'Bryne Motion (O'Bryne June 2007 Report) at 1

(emphases in original).]  The Court finds that this portion of

the O'Bryne June 2007 Report is proper rebuttal.  The O'Bryne

Motion is therefore DENIED as to this portion of the O'Bryne June

2007 Report.

          The O'Bryne June 2007 Report also addresses the

necessity of the lessor's consent to operate the Boneyard and

opines that the Boneyard

>     constitute[s] a gross violation of:
>     
>     •    The *Indenture of Lease, Document 95-6*,
>          section 3 Observance of Laws; section 8
>          Waste; section 13 Use of Premises and
>          Practice of Good Husbandry; section 16
>          Surrender of Premises.
>     
>     •    *Guidelines for Livestock Waste
>          Management, Hawaii State Department of
>          Health, Wastewater Branch, Pollution
>          Prevention Guidelines section B, section
>          7(b); and Abandonment Guidelines.
>     
>     •    *Hawaii Administrative Rules (HAR) Title
>          11, DOH, Chapter 11, Sanitation, S11-11-
>          6 Livestock, poultry and stables -
>          section (a)(3); section (c); and S11-26-
>          34 Rodents - section b[.]

[Id.]  The Court finds that this portion of the O'Bryne June 2007

Report does not contradict or rebut anything in the Yost May 2007

Report or the Closure Report and therefore does not constitute a

proper rebuttal report.  Further, O'Bryne cannot give his opinion as to legal conclusions.  See Hangarter v. Provident Life & Accident Ins. Co., 373 F.3d 998, 1016 (9th Cir. 2004).  The Court therefore GRANTS the O'Bryne Motion as to this portion of the O'Bryne June 2007 Report.  That portion of the report is STRICKEN.  At trial, O'Bryne is not permitted to testify regarding that portion of the report.

The Glanville June 2007 Report, which includes both the Yost May 2007 Report and the Closure Report in its list of referenced documents, addresses the pollution potential to the soil, groundwater, and nearby surface water.  [Exh. S to O'Bryne Motion (Glanville June 2007 Report).]  This is the same subject matter addressed in the Yost May 2007 Report.  Yost ultimately concludes that "the conditions described in the Phase II report by GeoEngineers relating to the animal disposal site constitute neither a hazard of nutrient nor biological contamination to the soil, groundwater and surface water . . . ."  [Exh. P to O'Bryne Motion (Yost May 2007 Report) at 3.]  The Court finds that the Glanville June 2007 Report contradicts or rebuts the Yost May 2007 Report.  The Glanville June 2007 Report is proper rebuttal and the O'Bryne Motion is therefore DENIED as to the Glanville June 2007 Report.

B.    **October 2007 Reports**

1.    **Djou Report**

The introduction to the Djou October 2007 Report states that a trench excavation was conducted on October 4, 2007 to examine the condition of the Boneyard.  On October 5, 2007, Djou visited the site to observe the trenches and conduct twelve additional test pits.  [Exh. Q to Hallstrom Motion (Djou October 2007 Report) at 1.]  Djou states: "I believe that this trenching exploration has provided new factual data to allow me to prepare a revised volumetric calculation to supplement my opinions previously presented . . . ."  [Id. at 2.]  Even though Djou used the results of the additional trenching exploration to cast doubt on the Kwong August 2007 Report, it is not rebuttal evidence as defined by Rule 26(a)(2)(A).  See Daly v. Fesco Agencies NA Inc., Nos. 03-35052, 03-35232, 2004 WL 1895029, at *2 (9th Cir. Aug. 23, 2004) (holding that the district court did not abuse its discretion in excluding testimony regarding the results of an expert witness' recent experiment because it was not proper rebuttal evidence).  Plaintiff could have conducted the additional trenching exploration prior to his original expert disclosure deadline, or at the very least, prior to his June 2007 rebuttal reports.  To the extent that the entire Djou October 2007 Report is based upon the additional trenching exploration, the Court finds that the report is not rebuttal in nature.

30

### 2.   __Le Roux Report__

There are two sections of the Le Roux October 2007 Report: "CCMIC REBUTTAL"; and "ADDITIONAL WORK NOT PREVIOUSLY KNOWN". [Exh. S to Hallstrom Motion (Le Roux October 2007 Report).]  The section titled "CCMIC REBUTTAL" discusses various criticisms of the Lee August 2007 Report.  For example, Le Roux states: "The 422cy used in Mr. Lee's estimate will hardly be enough to construct just the access road to the milking barn which clearly exists."  Further, "[w]e feel Mr. Lee's unit rates for removal of demolished materials in general are to [sic] low and inconsistent."  [__Id.__ at 1.]  Le Roux questions Lee's failure to include "allowances for mobilization and demobilization of earth moving and other equipment" or a "contingency allowance". [__Id.__ at 2.]  Such analysis of an opposing party's expert reports is the proper subject of a rebuttal report.  Southern Foods' Hallstrom Motion is therefore DENIED as to the portion of the Le Roux October 2007 Report titled CCMIC REBUTTAL.

The section of the Le Roux October 2007 Report titled ADDITIONAL WORK NOT PREVIOUSLY KNOWN is based upon the Djou October 2007 Report.  As noted __supra__, the data from the Djou October 2007 Report is not proper rebuttal evidence.  The Court therefore finds that the section of the Le Roux October 2007 Report titled ADDITIONAL WORK NOT PREVIOUSLY KNOWN is not a proper rebuttal report.

### 3.  **Glanville Reports**

The Glanville September 6, 2007 Report analyzes the conclusions of the Kwong and Yost August 2007 Reports.  For example, Glanville states that "Dr. Kwong's estimate of the volume of the burial site appears to be quite reasonable."  [Exh. R to Hallstrom Motion (Glanville September 6, 2007 Report) at 2.] Glanville then mentions additional factors that are relevant to the pollution potential, including mass and pollutant mobility. He also notes that, based on an earlier study which concluded that the stream on the Premises was "losing water", Yost opined that contaminants from the Boneyard would not enter the stream from the groundwater.  Glanville, however, noted that: "If the 'losing stream' condition is present along the full length of the stream, this conclusion is correct.  But, it is not unusual for some stream segments to lose water into the underlying groundwater, and for adjacent segments to simultaneously gain water."  [Id.]  He then discusses this possibility based on soil survey maps which he attached to a prior report.  Glanville also criticizes Yost's opinion that there is no harm to the environment because most of the nitrogen will be dentrified, as well as Yost's analysis of the addition of phosphate from the bones and teeth of the buried cattle to the soil.  This Court finds that the Glanville September 6, 2007 Report "is intended solely to contradict or rebut" the Kwong and Yost August 2007

32

Reports.  The Hallstrom Motion is therefore DENIED as to the Glanville September 6, 2007 Report.

The Glanville October 18, 2007 Addendum, however, is based upon the findings of the additional trenching work conducted on October 4, 2007.  As noted _supra_, the results of the additional trenching work is not proper rebuttal evidence.  The Court therefore finds that the Glanville October 18, 2007 Addendum is not a proper rebuttal report.

### 4.   **Hallstrom Report**

Hallstrom's report addresses his "opinion regarding the impact the presence of these bones may have on the market value of the property." [Exh. T to Hallstrom Motion (Hallstrom October 2007 Report) at 1.]  Plaintiff argues that this is a proper rebuttal of the Yost May 2007 Report and the Yost August 2007 Report, both of which stated that the Boneyard added to the value of the premises. [Pltf.'s Mem. in Opp. to Hallstrom Motion at 12.]  The Yost August 2007 Report states that, based upon his calculation of the amount of fertilizer the bones added to the soil, "it is clear that the dairy has, indeed, contributed substantial value to the land it has occupied." [Exh. N to Hallstrom Motion (Yost August 2007 Report) at 4.]  This opinion originally appeared in the Yost May 2007 Report, in which he states: "I conclude that the conditions . . . relating to the animal disposal site . . . increase the subsequent value of the

soil as a media for normal plant growth due to the contribution of otherwise deficient nutrients calcium and phosphorus." [Exh. P to O'Bryne Motion (Yost May 2007 Report) at 3.] Thus, while an appraisal of the market value of the Premises may be proper rebuttal of Yost's opinion that the Boneyard added value to the Premises, the Hallstrom October 2007 Report is untimely because Plaintiff did not submit it within thirty days of Southern Foods' disclosure of the Yost May 2007 Report.[11]  See Fed. R. Civ. P. 26(a)(2)(C).

## II.   <u>Supplemental Reports</u>

In the alternative, Plaintiff argues that the Le Roux June 2007 Report and the October 2007 reports are proper supplemental reports.

Rule 26(e) governs the supplementation of expert reports.  It provides, in pertinent part:

> **(1) In General.**  A party who has made a disclosure under Rule 26(a) . . . must supplement or correct its disclosure or response:
>> (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or

---

[11] Although this Court extended Plaintiff's expert disclosure deadline forty-five days, up to and including October 22, 2007, the extension did not apply to Plaintiff's rebuttal of Southern Foods' May 2007 expert reports, which were due in June 2007.  The extension only applied to Plaintiff's rebuttal disclosures which were due in September 2007.

(B) as ordered by the court.
**(2) Expert Witness.**  For an expert whose report
must be disclosed under Rule 26(a)(2)(B), the
party's duty to supplement extends both to
information included in the report and to
information given during the expert's deposition.
Any additions or changes to this information must
be disclosed by the time the party's pretrial
disclosures under Rule 26(a)(3) are due.

Fed. R. Civ. P. 26(e).

"Although Fed.R.Civ.P. 26(e) requires a party to

'supplement or correct' disclosure upon information later

acquired, that provision does not give license to sandbag one's

opponent with claims and issues which should have been included

in the expert witness' report . . . ."  <u>Beller ex rel. Beller v.</u>

<u>United States</u>, 221 F.R.D. 689, 695 (D.N.M. 2003) (citation

omitted).  For example, courts have rejected supplemental expert

reports that: 1) "were significantly different" from the expert's

original report and effectively altered the expert's theories; or

2) attempted to "deepen" and "strengthen" the expert's prior

reports.  <u>See</u> <u>id.</u> (citing <u>Council 31 AFL-CIO v. Ward</u>, 1995 WL

549022 (N.D. Ill. Sept. 12, 1995); <u>Resolution Trust Corp. v.</u>

<u>Gregory</u>, D.N.M. No. CIV 94-0052).  The court in <u>Beller</u> noted

that, to allow these types of supplemental reports

would create a system where preliminary reports
could be followed by supplementary reports and
there would be no finality to expert reports, as
each side, in order to buttress its case or
position, could "supplement" existing reports and
modify opinions previously given.  This practice
would surely circumvent the full disclosure
requirement implicit in Rule 26 and would

35

> interfere with the Court's ability to set case
> management deadlines, because new reports and
> opinions would warrant further consultation with
> one's own expert and virtually require new rounds
> of depositions.  That process would hinder rather
> than facilitate settlement and the final
> disposition of the case.

Id.

**A.  Le Roux June 2007 Report**

The Le Roux April 2007 Report and the Le Roux June 2007 Report are very similar.  Both identify a list of "improvements" to be removed from the Premises.  Items 1, 2, 3, 4, 5, 6, 8, 9, and 12 in the April 2007 list are repeated verbatim in the June 2007 list.  Item 7 in the April 2007 list was deleted; portions of item 10 were deleted or revised; one sentence was deleted from item 11 in the April 2007 list; and the allowances for the estimate in item 13 in the April 2007 list were revised.  There is also another improvement added to the June 2007 list.  The June 2007 Report estimates the construction related costs at $1,863,000, while the April 2007 Report merely gives a preliminary assessment of between $1.5 and $2.0 million.

The Court has reviewed the differences between the April 2007 Report and the June 2007 Report and finds that they do not drastically alter Le Roux's original disclosure.  Cf. Keener v. United States, 181 F.R.D. 639, 641 (D. Mont. 1998) ("To countenance a dramatic, pointed variation of an expert's disclosure under the guise of Rule 26(e)(1) supplementation would

be to invite the proverbial fox into the henhouse.   The
experienced expert could simply 'lie in wait' so as to express
his genuine opinions only after [the opposing party] discloses
hers.").   The Court finds that the Le Roux June 2007 Report is a
proper supplement to the Le Roux April 2007 Report.   The O'Bryne
Motion is therefore DENIED as to the Le Roux June 2007 Report.

### B.   Djou October 2007 Report

        The Djou October 2007 Report is based upon the
additional field work conducted in early October 2007.   Plaintiff
could have conducted the additional field work prior to his
original expert disclosure deadline or before the June 2007
rebuttal reports and Plaintiff should have known at that time
that such additional field work would be relevant.   "Rule 26(e)
imposes a duty on the producing party to supplement information
that is incorrect or incomplete.   It does not give the producing
party a license to disregard discovery deadlines and to offer new
opinions under the guise of the 'supplement' label."   Allgood v.
Gen. Motors Corp., No. 1:02-cv-1077-DFH-TAB, 2007 WL 647496, at
*3 (S.D. Ind. Feb. 2, 2007) (citations omitted); see also
Palmer v. Asarco Inc., Nos. 03-CV-0498-CVE-PJC,
03-CV-0565-CVE-PJC, 03-CV-0566-CVE-PJC, 03-CV-0567-CVE-PJC,
03-CV-0569-CVE-PJC, 2007 WL 2254343, at *4 (N.D. Okla. Aug. 3,
2007) ("Plaintiffs can not reasonably claim that Dr. Brown's new
affidavit is a supplement simply because plaintiffs asked him to

expand the scope of his expert testimony.  Dr. Brown could have performed the same modeling in a timely fashion and, if he were going to perform site specific modeling, plaintiffs should have disclosed his modeling report within the deadlines for expert disclosures.").  This Court therefore finds that the Djou October 2007 Report is not a proper supplemental report.

###### C.   **Le Roux October 2007 Report**

Insofar as the portion of the Le Roux October 2007 Report titled ADDITIONAL WORK NOT PREVIOUSLY KNOWN is based upon the Djou October 2007 Report, the Court also finds that it is not a proper supplemental report.

###### D.   **Glanville October 18, 2007 Addendum**

Insofar as the Glanville October 18, 2007 Addendum is also based upon the results of the additional trenching work conducted on October 4, 2007, the Court finds that it is not a proper supplemental report.

###### E.   **Hallstrom October 2007 Report**

The Hallstrom October 2007 Report, which addresses the market value of the Premises, cannot be considered a supplement of the Hallstrom July 2007 Report because the July report addressed "a reasonable range of minimum market rent and percentage rent and for the Property as of specific retrospective dates of value and liquidated damages valuation."  [Plaintiff Jeffrey S. Lindner's Expert Disclosure (7/3/07) at 2.]

38

"Fed.R.Civ.P. 26(e) does not grant a license to supplement a
previously filed expert report because a party wants to, but
instead imposes an obligation to supplement the report when a
party discovers the information it has disclosed is incomplete or
incorrect." <u>Coles v. Perry</u>, 217 F.R.D. 1, 3 (D.D.C. 2003).

## III. **Plaintiff's Countermotion**

        In the Countermotion, Plaintiff argues that, if the
Court is inclined to strike his June 2007 rebuttal reports, the
Court should amend the scheduling order and extend his expert
disclosure deadline to June 1, 2007, which would render the
disclosure of the O'Bryne June 2007 Report and the Glanville June
2007 Report timely.  The Court has already denied the O'Bryne
Motion with regard to the Glanville June 2007 Report and a
portion of the O'Bryne June 2007 Report.  The Court granted the
O'Bryne Motion as to the remainder of the O'Bryne June 2007
Report because it consisted of improper legal opinions.  An
amendment of the scheduling order would not resolve the defect in
the O'Bryne June 2007 Report.  Plaintiff's request to extend the
expert disclosure deadline is therefore moot.

        The Court also rejects Plaintiff's argument that the
Court should deny the O'Bryne Motion because Southern Foods did
not object to Plaintiff's June 2007 rebuttal expert disclosures
in a timely manner.  Even assuming, *arguendo*, that Southern
Foods' objections were untimely, it would not render O'Bryne

improper opinions on legal issues admissible in this case.

## IV. **Sanctions**

To the extent that the Djou October 2007 Report, the section of the Le Roux October 2007 Report titled ADDITIONAL WORK NOT PREVIOUSLY KNOWN, the Glanville October 18, 2007 Addendum, and the Hallstrom October 2007 Report are neither proper rebuttal reports nor proper supplemental reports, Plaintiff should have disclosed them prior to his original expert disclosure deadline. Federal Rule of Civil Procedure 37(c)(1) provides:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.  In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
> (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
> (B) may inform the jury of the party's failure; and
> (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

The exclusion sanction is "self-executing" and "automatic".  <u>See</u> Fed. R. Civ. P. 37(c) advisory committee's note (1993 Amendments).  Its harsh penalties are ameliorated by the limitation that sanctionable violations be without substantial justification and by the exception for harmless violations.  Rule 37(c)(1), however, does not apply to the disclosure of evidence

40

offered solely for impeachment purposes.   <u>See</u> <u>id.</u>

The Court finds that the untimely disclosure of the aforementioned reports was not substantially justified. Plaintiff asserts that, after the Court granted his request for an extension of time to file his rebuttal disclosures, he diligently sought out a firm to conduct additional field work on the Premises.  Plaintiff, however, does not explain why he could not have conducted the additional field work prior to his expert disclosure deadline.  The Court finds that, under the circumstances of this case, including Geolabs' 2001 recommendation that additional subsurface exploration be considered, Plaintiff could have conducted additional field work prior to his April 2, 2007 expert disclosure deadline.  Further, with regard to the Hallstrom October 2007 Report, Plaintiff offers no reason why he failed to submit Hallstrom's appraisal with thirty days of the Yost May 2007 Report.

Further, this Court cannot find that Plaintiff's untimely disclosures were harmless.  Even if Southern Foods has the opportunity to rebut Plaintiff's October 2007 disclosures and to conduct discovery thereon, allowing Plaintiff's untimely disclosures to stand would likely delay the case and lead to additional rounds of expert disclosures.  Had Plaintiff properly disclosed the contested reports before his original expert disclosure deadlines, it would have saved the parties' and the

41

Court's time and resources.  This Court therefore finds that sanctions are warranted under Rule 37(c)(1).

The Ninth Circuit gives "particularly wide latitude to the district court's discretion to issue sanctions under Rule 37(c)(1)." Yeti by Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1106 (9th Cir. 2001) (citation omitted).  The Court is inclined to strike Plaintiff's untimely reports.  In order to determine if the exclusion sanction is appropriate, the Court must consider the following factors: "1) the public's interest in expeditious resolution of litigation; 2) the court's need to manage its docket; 3) the risk of prejudice to the defendants; 4) the public policy favoring disposition of cases on their merits; 5) the availability of less drastic sanctions." Wendt v. Host Int'l, Inc., 125 F.3d 806, 814 (9th Cir. 1997).

The Court finds that allowing the untimely reports to stand would delay the instant case and would prejudice the other parties.  Thus, the first three factors weigh in favor of exclusion.  The Court considers the fourth factor to be neutral because exclusion in this case would not be tantamount to dismissal.  If the Court excludes the Djou October 2007 Report, the section of the Le Roux October 2007 Report titled ADDITIONAL WORK NOT PREVIOUSLY KNOWN, the Glanville October 18, 2007 Addendum, and the Hallstrom October 2007 Report, all four experts could still testify as to their other reports in this case.

42

Exclusion therefore would not preclude a decision on the merits. The only factor that weighs against exclusion is the availability of less drastic sanctions.  The Court could, for example, allow the untimely reports but require Plaintiff to pay Southern Foods' attorney's fees and costs associated with the instant motions. This Court, however, finds that the majority of the factors weigh in favor of exclusion.

The Court therefore GRANTS the Hallstrom Motion IN PART and STRIKES the Djou October 2007 Report, the section of the Le Roux October 2007 Report titled ADDITIONAL WORK NOT PREVIOUSLY KNOWN, the Glanville October 18, 2007 Addendum, and the Hallstrom October 2007 Report.  At trial, any testimony about these reports at trial is excluded.

## CONCLUSION

On the basis of the foregoing, Southern Foods' Motion to Exclude the Testimony of Tim O'Bryne and Thomas D. Glanville and to Strike Their Rebuttal Reports and the Rebuttal Report of Emile J. Le Roux, filed September 28, 2007, is HEREBY GRANTED IN PART AND DENIED IN PART; Plaintiff's countermotion to the O'Bryne Motion, filed November 9, 2007, is HEREBY DENIED; and Southern Foods' Motion to Exclude the Testimony of Thomas D. Glanville and James E. Hallstrom, Jr., to Strike Their Reports Submitted on October 22, 2007, and to Strike the Reports of S.K. Djou and Emile J. Le Roux Submitted on October 22, 2007, filed

November 9, 2007, is HEREBY GRANTED IN PART AND DENIED IN PART.

The O'Bryne Motion is:

1)   DENIED as to the Le Roux June 2007 Report;

2)   DENIED with regard to the paragraph of the O'Bryne June
     2007 Report which begins: "Generally-accepted Standard
     Operating Procedures (SOPs) embraced by the North
     American dairy and beef production industry, as they
     pertain to this case, applicable to the time period in
     question (1988 to the present day), are as follows . .
     . .", but GRANTED with regard to the remainder of the
     O'Bryne June 2007 Report; and

3)   DENIED as to the Glanville June 2007 Report.

The Hallstrom Motion is:

1)   GRANTED as to the Djou October 2007 Report;

2)   DENIED as to the portion of the Le Roux October 2007
     Report titled "CCMIC REBUTTAL", but GRANTED as to the
     portion titled "ADDITIONAL WORK NOT PREVIOUSLY KNOWN";

3)   DENIED as to the Glanville September 6, 2007 Report,
     but GRANTED as to the Glanville October 18, 2007
     Addendum; and

4)   GRANTED as to the Hallstrom October 2007 Report.

The Court emphasizes that, to the extent that the Court has
allowed Plaintiff's rebuttal reports, Plaintiff's experts are
limited to testifying as rebuttal experts, *i.e.* they cannot

44

testify in Plaintiff's case-in-chief, and they cannot testify unless and until the opposing parties' experts testify on the specific areas set forth in Plaintiff's rebuttal reports.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, March 19, 2008.



  /S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States Magistrate Judge

JEFFREY LINDNER V. MEADOW GOLD DAIRIES, INC., ETC.; CIVIL NO. 06-00394 JMS-LEK; ORDER GRANTING IN PART AND DENYING IN PART SOUTHERN FOODS GROUP, L.P.'S MOTION TO EXCLUDE THE TESTIMONY OF TIM O'BRYNE AND THOMAS D. GLANVILLE AND TO STRIKE THEIR REBUTTAL REPORTS AND THE REBUTTAL REPORT OF EMILE J. LE ROUX; DENYING JEFFREY S. LINDNER'S COUNTERMOTION; AND GRANTING IN PART AND DENYING IN PART SOUTHERN FOODS' MOTION TO EXCLUDE THE TESTIMONY OF THOMAS D. GLANVILLE AND JAMES E. HALLSTROM, JR., TO STRIKE THEIR REPORTS SUBMITTED ON OCTOBER 22, 2007, AND TO STRIKE THE REPORTS OF S.K. DJOU AND EMILE J. LE ROUX SUBMITTED ON OCTOBER 22, 2007